UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

(FILED ELECTRONICALLY)

CIVIL ACTION NO. ~~1:18-cv-52-GNS~~

UNITED STATES OF AMERICA                                    PLAINTIFF

vs.

TEDDY WEATHERFORD, AS HEIR OF                               DEFENDANTS
LOLA J. WEATHERFORD
304 Jessie Avenue
Hopkinsville, KY 42240-4730

TINA UTLEY, AS HEIR OF
LOLA J. WEATHERFORD
990 Pea Ridge Sharon Grove Road
Elkton, KY 42220-8938

BARBARA WEATHERFORD, AS HEIR OF
LOLA J. WEATHERFORD
2981 Lake Road
Woodland, TN 37191-9252

BESSIE WUKICH A/K/A
BESSIE J. WEATHERFORD, AS HEIR OF
LOLA J. WEATHERFORD
808 Long Road
Elkton, KY 42220-8911

GINA HADDOCK A/K/A
GINA NICOLE COLBRIDGE, AS HEIR OF
LOLA J. WEATHERFORD
2175 Greenville Road
Hopkinsville, KY 42240-1103

DANIELLE WEATHERFORD, AS HEIR OF
LOLA J. WEATHERFORD
304 W. Washington Street
Elkton, KY 42220-8835

ANY UNKNOWN HEIRS AND SPOUSES OF
HEIRS OF LOLA J. WEATHERFORD
SERVE: Warning Order Attorney

## COMPLAINT FOR FORECLOSURE

1.    This is a mortgage foreclosure action brought by the United

States of America on behalf of its agency, the United States Department of

Agriculture Rural Housing Service also known as Rural Development (hereinafter collectively "RHS").

2.     In this case, the last remaining borrower is now deceased.  In accordance with the requirements of the law, the United States names her heirs as defendants.  The United States does so, not to make the heirs liable for her debt, but to allow the heirs an opportunity to assert a claim to the real property if they so desire and to allow the United States to obtain good title through this foreclosure action.

3.     Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in this judicial division, where the subject property is located.

4.     RHS is the holder of a promissory note ("the First Note") executed for value on May 7, 1979 by Walter J. Salmon and his wife Willie P. Salmon ("the First Borrowers").  The principal amount of the Note was $27,750.00, bearing interest at the rate of 9.0 percent per annum, and payable in monthly installments as specified in the Note.  A copy of the First Note is attached as **Exhibit A** and incorporated by reference as if set forth fully herein.

5.     The First Note is secured by a Real Estate Mortgage (the "First Mortgage") recorded on May 7, 1979, in Mortgage Book 72, Page 200, in the Office of the Clerk of Todd County, Kentucky.  Through the First Mortgage, the First Borrowers granted RHS a first mortgage lien against the real property including all improvements, fixtures and appurtenances thereto as described in the First Mortgage.  A copy of the First Mortgage is attached as **Exhibit B** and incorporated by reference as if set forth fully herein.

6.     On or about October 31, 1997, William H. Schiess executed and delivered to RHS an Assumption Agreement, a copy of which is attached and marked **Exhibit C**, and which is hereby incorporated by reference as if set forth at length herein.  In and by the Assumption Agreement, William H.

Schiess became liable on new terms to RHS under the First Note and First Mortgage.

7.   Contemporaneously, William H. Schiess, unmarried, acquired title to the Property via deed from Gary Salmon, et ux., et al., dated the 31st of October 1997 and recorded in Deed Book 149, Page 46, in the Office of the Clerk of Todd County, Kentucky.

8.   RHS is the holder of a second promissory note ("the Second Note") executed for value on October 31, 1997 by William H. Schiess ("the Second Borrower").  The principal amount of the Note was $29,760.00, bearing interest at the rate of 7.250 percent per annum, and payable in monthly installments as specified in the Note.  A copy of the Second Note is attached as **Exhibit D** and incorporated by reference as if set forth fully herein.

9.   The Second Note is secured by a Real Estate Mortgage (the "Second Mortgage") recorded on October 31, 1997, in Mortgage Book 115, Page 263, in the Office of the Clerk of Todd County, Kentucky.  Through the Second Mortgage, the Second Borrower granted RHS a mortgage lien against the same real property including all improvements, fixtures and appurtenances as described in the First Mortgage.  A copy of the Second Mortgage is attached as **Exhibit E** and incorporated by reference as if set forth fully herein.

10.   To receive subsidies on the loan, the Second Borrower signed a Subsidy Repayment Agreement authorizing RHS to recapture, upon transfer of title or non-occupancy of the Property, any subsidies granted to the Second Borrower by RHS.  A copy of the Subsidy Repayment Agreement is attached as **Exhibit F** and incorporated by reference as if set forth fully herein.

11.   On or about October 2, 2000, Lola J. Weatherford and Liza J. Russell (the "Third Borrowers"), now deceased, executed and delivered to RHS an Assumption Agreement, a copy of which is attached and marked **Exhibit G**, and which is hereby incorporated by reference as if set forth at length herein.  In and by the Assumption Agreement, the Third Borrowers became

3

liable on new terms to RHS under the First Note and First Mortgage and the Second Note and Second Mortgage.

12.   In addition, on October 2, 2000, the Third Borrowers, for value received, executed and delivered to RHS a third Promissory Note (the "Third Note") in the principal amount of $390.00, bearing interest at the rate of 6.875 percent per annum.  Beginning November 2, 2000, principal and interest were payable in monthly installments of $2.50, due on the 2nd of each month until October 2, 2033, at which time the final installment of the outstanding principal and interest was due and payable.  A copy of the Third Note is attached as **Exhibit H**, and incorporated by reference as if set forth fully herein.

13.   The Third Note is secured by a Real Estate Mortgage (the "Third Mortgage") recorded on October 2, 2000, in Mortgage Book 130, Page 518, in the Office of the Clerk of Todd County, Kentucky.  Through the Third Mortgage, the Third Borrowers granted RHS a mortgage lien against the real property including all improvements, fixtures and appurtenances thereto as described in the First and Second Mortgages, and with a current street address of 304 West Washington, Elkton, Todd County, Kentucky (the "Property") and as described in more detail in the Third Mortgage.  A copy of the Third Mortgage is attached as **Exhibit I** and incorporated by reference as if set forth fully herein.

14.   To qualify for subsidies under the Assumption Agreement and other loan documents, the Third Borrowers executed and delivered to RHS a Subsidy Repayment Agreement acknowledging the right of RHS to recapture, upon transfer of title or non-occupancy of the Property, any interest credits granted to them by RHS.  A copy of the Subsidy Repayment Agreement is attached hereto marked **Exhibit J** and incorporated by reference as if set forth fully herein.

15.    Contemporaneously, with the execution of the Assumption Agreement, Third Note, Third Mortgage, and Subsidy Agreement, Lola J. Weatherford, unmarried, and Liza J. Russell, unmarried, acquired title to the Property via deed from William H. Schiess, unmarried, dated the 2nd of October 2000 and recorded in Deed Book 158, Page 175, in the Office of the Clerk of Todd County, Kentucky.

16.    Upon information and belief, Liza J. Russell died on June 5, 2003.  Upon her death, all of her right, title and interest in the Property vested in Lola J. Weatherford, pursuant to her right of survivorship as contained in the Deed originally conveying the Property to Lola J. Weatherford and Liza J. Russell, that being Deed of record in Deed Book 158, page 175, in the Commonwealth of Kentucky, Todd County Clerk's Office. Nonetheless, Lola J. Weatherford, individually and as Administratrix of the Estate of Liza J. Russell, Lola J. Weatherford and the heirs-at-law of Liza J. Russell executed a Deed of Conveyance dated September 25, 2003 and recorded in Deed Book 167, Page 327, in the Commonwealth of Kentucky, Todd County Clerk's Office conveying Liza J. Russell's interests to Lola J. Weatherford.

17.    Lola J. Weatherford has defaulted on the Assumption Agreement and the Notes and Mortgages assumed under that agreement, and has defaulted on the Third Note and Third Mortgage, by failing to make payments when due and through non-occupancy of the Property.

18.    RHS has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other sums due under the loan documents, to be due and payable.  Further, RHS duly sent notice of the default and acceleration of the loan.

19.    In accordance with the loan documents, the United States is entitled to enforce the Assumption Agreement, Notes, Mortgages and Subsidy

Agreement through this foreclosure action and to have the Property sold to pay all amounts due, together with the costs and expenses of this action.

20.    Plaintiff is owed the principal amount of $31,811.54, plus $7.561.84 interest as of September 15, 2016, and $19,030.07 for reimbursement of interest credits, late charges in the amount of $289.25, and fees assessed of $8,561.07, for a total unpaid balance due of $67,253.77 as of September 15, 2016, with interest accruing at the daily rate of $7.5732 from September 15, 2016, until the date of entry of Judgment, and interest thereafter according to law, plus costs, disbursements and expenses.

21.    Upon information and belief, Lola J. Weatherford died on or about May 3, 2016.  Upon her death, all of Lola J. Weatherford's right, title and interest in the Property vested in her heirs-at-law.

22.    The Defendant **Teddy L. Weatherford**, as heir to Lola J. Weatherford, has or may claim an interest in the Property by virtue of his status as an heir of Lola J. Weatherford, which interest is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the plaintiff.  Said Defendant is called upon to come forth and assert his interest in or claims upon the Property, and offer proof thereof, or be forever barred.

23.    The Defendant **Tina Utley**, as heir to Lola J. Weatherford, has or may claim an interest in the Property by virtue of her status as an heir of Lola J. Weatherford, which interest is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the plaintiff.  Said Defendant is called upon to come forth and assert his interest in or claims upon the Property, and offer proof thereof, or be forever barred.

24.    The Defendant **Barbara Weatherford**, as heir to Lola J. Weatherford, has or may claim an interest in the Property by virtue of her status as an heir of Lola J. Weatherford, which interest is inferior in rank

and subordinate in priority to the first mortgage lien on the Property in favor of the plaintiff.  Said Defendant is called upon to come forth and assert his interest in or claims upon the Property, and offer proof thereof, or be forever barred.

25.   The Defendant **Bessie Wukich a/k/a Bessie J. Weatherford**, as heir to Lola J. Weatherford, has or may claim an interest in the Property by virtue of her status as an heir of Lola J. Weatherford, which interest is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the plaintiff.  Said Defendant is called upon to come forth and assert his interest in or claims upon the Property, and offer proof thereof, or be forever barred.

26.   The Defendant **Gina Haddock a/k/a Gina Nicole Colbridge**, as heir to Lola J. Weatherford, has or may claim an interest in the Property by virtue of her status as an heir of Lola J. Weatherford, which interest is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the plaintiff.  Said Defendant is called upon to come forth and assert his interest in or claims upon the Property, and offer proof thereof, or be forever barred.

27.   The Defendant **Danielle Weatherford**, as heir to Lola J. Weatherford, has or may claim an interest in the Property by virtue of her status as an heir of Lola J. Weatherford, which interest is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the plaintiff.  Said Defendant is called upon to come forth and assert his interest in or claims upon the Property, and offer proof thereof, or be forever barred.

28.   Defendants **Any Unknown Heirs or Spouses of Heirs of the Lola J. Weatherford**, have or may claim an interest in the Property by virtue of their status as the heirs and spouses of heirs of Lola J. Weatherford, which interests are inferior in rank and subordinate in priority to the first

7

mortgage lien on the Property in favor of the plaintiff.  Said Defendants are called upon to come forth and assert their interests in or claims upon the Property, and offer proof thereof, or be forever barred.

29.   The Property is indivisible and cannot be divided without materially impairing its value and the value of RHS's lien thereon.

30.   There are no other persons or entities purporting to have an interest in the Property known to the Plaintiff.

WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

a.   In rem judgment against the interests of Defendants in the Property in the principal amount of $31,811.54, plus $7,561.84 interest as of September 15, 2016, and $19,030.07 for reimbursement of interest credits, late charges in the amount of $289.25, and fees assessed of $8,561.07, for a total unpaid balance due of $67,253.77 as of September 15, 2016, with interest accruing at the daily rate of $7.5732 from September 15, 2016, until the date of entry of Judgment, and interest thereafter according to law, plus costs, disbursements and expenses;

b.   That the United States be adjudged a lien on the Property, prior and superior to any and all other liens, claims, interests and demands, except liens for unpaid real estate ad valorem taxes;

c.   That the United States' lien be enforced and the Property be sold in accordance with Title 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

d.   That the proceeds from the sale be applied first to the costs of this action, second to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs and fees due the United States,

with the balance remaining to be distributed to the parties as their liens or interests may appear;

       e.    That the Property be adjudged indivisible and be sold as a whole; and

       f.    That the United States receive any and all other lawful relief to which it may be entitled.

                     UNITED STATES OF AMERICA

                     RUSSELL M. COLEMAN
                     United States Attorney

                     s/ William F. Campbell
                     William F. Campbell
                     Assistant U.S. Attorney
                     717 West Broadway
                     Louisville, KY  40202
                     Phone:  502/582-5911
                     Fax:    502/625-7110
                     bill.campbell@usdoj.gov

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

1:18-cv-52-GNS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS

UNITED STATES OF AMERICA

**DEFENDANTS**

TEDDY WEATHERFORD, ET AL.

(b)   County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   TODD
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c)   Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II.  BASIS OF JURISDICTION     (Place an "X" in One Box Only)

☑ 1   U.S. Government
       Plaintiff

☐ 3   Federal Question
       (U.S. Government Not a Party)

☐ 2   U.S. Government
       Defendant

☐ 4   Diversity
       (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|                                              | PTF | DEF |                                                        | PTF | DEF |
|----------------------------------------------|-----|-----|--------------------------------------------------------|-----|-----|
| Citizen of This State                        | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State                     | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country      | ☐ 3 | ☐ 3 | Foreign Nation                                         | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☑ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☑ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V.  ORIGIN     (Place an "X" in One Box Only)

☑ 1   Original
       Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       another district
       (specify)

☐ 6   Multidistrict
       Litigation

☐ 7   Appeal to District
       Judge from
       Magistrate
       Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing  (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. SECTION 1345
Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII.  REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
  UNDER F.R.C.P. 23

DEMAND $
$67,253.77

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☑ No

## VIII.  RELATED CASE(S)
IF ANY

(See instructions):        JUDGE _____        DOCKET NUMBER _____

DATE
4/30/2018

SIGNATURE OF ATTORNEY OF RECORD
s/ William F. Campbell

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

(Rev. 11-10-75)                          FARMERS HOME ADMINISTRATION

| KIND OF LOAN |
Type: __RH__

Pursuant to:
☐ Consolidated Farm and Rural Development Act.
☒ Title V of the Housing Act of 1949.

**PROMISSORY NOTE**

STATE
KENTUCKY
COUNTY
TODD
CASE NO.

Date _____ May 7 _____ , 19 79

**FOR VALUE RECEIVED**, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration,

United States Department of Agriculture, (herein called the "Government") at its office in Elkton, Kentucky _____,

THE PRINCIPAL SUM OF __TWENTY-SEVEN THOUSAND SEVEN HUNDRED FIFTY----------__

DOLLARS ($ _27,750.00----------------------_ ), plus **INTEREST** on the **UNPAID PRINCIPAL** of

NINE-------------------- PERCENT ( _____9_____ %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of four alternatives as indicated below: (check one)

☐ I.    Principal and Interest payments shall be deferred. The first installment shall be all accrued interest and shall be due

on _____, 19 ___. Payment of Principal and later accrued Interest shall be in _____ installments as indicated in the box below;

☐ II.    Principal and Interest payments shall be deferred. The interest accrued to _____, 19 _____

shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of

such new Principal herein $_____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ III.    Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____

of each _____ beginning on _____, 19 ___, through_____, 19 ___,

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below;

☒ IV.    Payments shall not be deferred. Principal and Interest shall be paid in _____396_____ installments as indicated in the box below:

$ 220.00 _____ on __JUNE 7TH__, 19 79 , and

$ 220.00 _____ thereafter on the _____7TH_____ of each __MONTH__ until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness

evidenced hereby, if not sooner paid, shall be due and **PAYABLE** __THIRTY-THREE__ ( _____33_____ ) **YEARS** from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

**EXHIBIT "A"**

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest computed to the effective date of the payment and then to principal.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower. Refunds and extra payments, as defined in the regulations (7 C.F.R. 1861.2) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the installments last to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

Borrower agrees that the Government at any time may assign this note and insure the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

Borrower hereby certifies that he is unable to obtain sufficient credit elsewhere to finance his actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower (a) will personally operate such property as a farm with his own and his family's labor if this is an FO loan, or (b) will personally occupy and use such property if this is an RH loan on a "nonfarm tract" or a section 504 RH loan.

**REFINANCING AGREEMENT:** If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

**DEFAULT:** Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "KIND OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice are hereby waived.

*Caroline A. McMullen*
Caroline A. McMullen, COMAKER

*Walter J. Salmon* (SEAL)
Walter J. Salmon *(BORROWER)*

*Willie P. Salmon* (SEAL)
Willie P. Salmon *(SPOUSE)*

Route 1

Trenton, KY  42286

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 27,750.00 | 5/7/79 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $27,750.00 | |

☆U. S. GOVERNMENT PRINTING OFFICE: 1978-665-052     *Position 2*     FmHA 440-16 (Rev. 11-10-75)

USDA-FmHA
Form FmHA 427-1 KY
(Rev. 6-21-76)

Position   5

REAL ESTATE MORTAGAGE FOR KENTUCKY    200

#67

THIS MORTGAGE is made and entered into by __Walter_J._Salmon_and_his_wife,__

Willie P. Salmon

residing in _____Todd_____ County, Kentucky, whose post office

address is _____Route 1, Trenton,_____, Kentucky 42286,
herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 5/7/1979 | $27,750.00 | 9% | 5/7/2012 |

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949;

And it is the purpose and intention of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower:

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby sell, convey, and assign, with general warranty, unto the Government the following property situated in the State of Kentucky,

County(ies) of _____Todd_____ :

Lot No. 4 in the Bland Sharp Property, plat recorded in Deed Book 99, Page 572, records of the Todd County Court Clerk's Office, and to which plat reference is hereby made for a more complete description.

This lot is subject to restrictions recorded in Deed Book 99, Page 573, records of the Todd County Court Clerk's Office.

Source of Title: Being the same property conveyed to Walter J. Salmon and wife by Bland Sharp and wife by Deed dated the _7_ day of _May_, 1979, and recorded in Deed Book _105_, Page _517_, records of the Todd County Court Clerk's Office.

FmHA 427-1 KY (Rev. 6-21-76)

EXHIBIT "B"

, 201

e same (or part of the same) land conveyed*

r with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and
thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto
onably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers,
eting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining
, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation
part thereof or interest therein-all of which are herein called "the property";

'O HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

.ORROWER for himself, his heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the
y to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements,
:ions, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless
vernment against any loss under its insurance of payment,of the note by reason of any default by Borrower. At all
/hen the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government,
ction agent for the holder.

To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the
s Home Administration.

If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes,
ents, insurance premiums and other charges upon the mortgaged premises.

Whether or not the note is insured by the Government, the Government may at any time pay any other amounts
d herein to be paid by Borrower and not paid by him when due, as well as any costs and expenses for the preservation,
ion, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the
rne by the note which has the highest interest rate.

All advances by the Government as described in this instrument, with interest, shall be immediately due and payable
rower to the Government without demand at the place designated in the latest note and shall be secured hereby. No
lvance by the Government shall relieve Borrower from breach of his covenant to pay. Any payment made by Borrower
applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

To use the loan evidenced by the note solely for purposes authorized by the Government.

To pay when due all taxes, liens, judgements, encumbrances, and assessments lawfully attaching to or assessed against
perty, including all charges and assessments in connection with water, water rights, and water stock pertaining to or
bly necessary to the use of the real property described above, and promptly deliver to the Government without
l receipts evidencing such payments.

To keep the property insured as required by and under insurance policies approved by, delivered to, and retained by
/ernment.

To maintain improvements in good repair and make repairs required by the Government; operate the property in a
id husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as
vernment from time to time may prescribe, and not to abandon the property, or cause or permit waste, lessening or
nent of the security covered hereby, or without the written consent of the Government, cut, remove, or lease any
gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

202

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may extend and defer the maturity of and renew and reamortize the debt evidenced by the note or any indebtedness to the Government secured hereby, release from liability to the Government any party so liable thereon, release portions of the property from and subordinate the lien hereof, and waive any other rights hereunder, without affecting the lien or priority hereof or the liability to the Government of Borrower or any other party for payment of the note or indebtedness secured hereby except as specified by the Government in writing.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, a bankrupt, or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens or record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all of any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for him will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, or national origin.

(21)  This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(22)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration, United States Department of Agriculture, at Lexington, Kentucky 40505, and in the case of Borrower to him at his post office address stated above.

* Give immediate source of mortgagor's title by instrument, parties, date, and book, page, and office of record.

') If any provision of this instrument or application thereof to any person or circumstances is held invalid, such idity will not affect other provisions or applications of the instrument which can be given effect without the invalidsion or application, and to that end the provisions hereof are declared to be severable.

**203**

en under the hand(s) and seal(s) of Borrower this _____ 7 _____ day of _____ May _____, 19 79

"This instrument also secured the recapture of any Interest Credit or subsidy which may be granted _____ *Walter J. Salmon* _____ (SEAL)
to the borrower(s) by the _____ Walter J. Salmon
Government pursuant to 42 U. S. C.
1490A."   W. P. S      *Willie P. Salmon* _____ (SEAL)
                              Willie P. Salmon

TE OF KENTUCKY   W·P·S      } ss:      **ACKNOWLEDGMENT**

NTY OF _____ TODD _____

Before me, _____ *Pamela Jessel* _____, a Notary Public in and for

County of _____ Todd _____, personally appeared _____ Walter J. Salmon

and _____ Willie P. Salmon _____, his wife,

acknowledged that they executed the foregoing instrument on the _____ 7 _____

of _____ May _____, 19 79, as their free act and deed.

TNESS my hand and official seal this _____ 7 _____ day of _____ May _____, 19 79.

_____ *Pamela Jessel*

ommission expires: _____ 9/13/82 _____      *Notary Public*

**PREPARER'S STATEMENT**

The form of this instrument was drafted by the Office of the General Counsel of the United States Department griculture, and the material in the blank spaces in the form was inserted by or under the direction of

yde Foster Chesnut _____,
                    (name)

O. Box 396, Elkton, KY 42220

                    (address)

_____ (Signature)

#6.50 p₂                **RECORDER'S CERTIFICATE**  Recorded in Mortgage Book

TE OF KENTUCKY                              No. 72  Page 200
                                    } ss:
NTY OF _____ TODD _____                    *A. G. Miller*, **Clerk**
                                          **Todd County Clerk**

I, _____ A. G. Miller _____, Clerk of the County Court for the County aforesaid, do certify

he foregoing mortgage was on the _____ 7th _____ day of _____ May _____, 19 79, lodged for record at 4:08

k _____ P _____ M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

iven under my hand this _____ 7th _____ day of _____ May _____, 19 79.

                    Clerk of _____ Todd _____ County Court

                    By _____, D. C.

FORM APPROVED
OMB No. 0575-0086

**USDA-RHS**
Form FmHA 1965-15
(Rev. 10-96)

## ASSUMPTION AGREEMENT
### Single-Family Housing Loans

*Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue. S.W., Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information  unless it displays a currently valid OMB control number.*

Type of Loan

☐ Sec. 502   ☐ Non Program   ☐ Sec. 504

Loan Number ▮▮▮▮▮▮▮

This Agreement dated _____ October 31, 1997 _____ , is between the United States of America, acting through the Rural Housing Service (RHS) and its successors and assigns (herein called the Government, and ___ William H Schiess ___

(herein called Borrower), whose mailing address is ___ 609 S Main St Apt 2, Elkton, KY   42220 ___

The Government is the holder of one or more debt instrument secured by one or more of the following described security instruments executed by ___ Walter J Salmon & Willie P Salmon ___

Case Number ▮▮▮▮▮▮▮ , on real property described therein which is located in

Todd _____ County, State of ___ Kentucky ___ :

| Type Instrument | Date Executed | Office Where Recorded | Book/Volume/ Document Number | Page Number |
|---|---|---|---|---|
| RE mortgage | 05/07/1979 | Todd | 72 | 000200 |
| | | | | |

In consideration of the assumption of indebtedness as herein provided and the Government's consent to this assumption and related conveyance of the security property, if applicable, it is agreed as follows:

1. Borrower hereby assumes liability for and agrees to pay to the order of the Government at the RHS office shown below (or other location as may later be specified) the principal sum of ___ Ten Thousand Four Hundred Ninety Two Dollars & 77/Cents ___
($ __ 10,492.77 __ ) plus interest at the rate of ___ Seven and One Quarter ___ dollars _____ percent ( __ 7.250 __ %) per annum, payable in installments as follows:

$ __ 69.83 __ on ___ November 28, 1997 ___ , and

$ __ 69.83 __ thereafter on the __ 28th __ of each ___ month ___ until the principal and interest are fully paid, except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable ___ Thirty Three ___ ( __ 33 __ ) years from the date of this Agreement.

2. Payments of principal and interest shall be applied in accordance with Government's accounting procedures in effect on the date of receipt of the payment. If Borrower's payment has not been received by the end of 15 days after it is due, Borrower will pay a late charge in the amount of 4% of the overdue payment of principal and interest.

3. The provisions of the debt instruments hereby assumed shall, except as modified herein, remain in full force and effect, and Borrower hereby assumes the obligations of and agrees to comply with all covenants, agreements, and conditions contained in said instruments, as modified herein, as though Borrower had executed them as of the date thereof as principal obligors. Nothing contained herein shall be construed to release the transferor from liability on the above described debt instruments.

4. Any provisions of the debt and security instruments which require that the borrower occupy the Government-financed dwelling or refinance to another credit source do not apply to assumption on Non Program terms.

5. This Agreement is subject to present regulations of the Government and to its future regulations which are not consistent with the express provisions hereof.

_____
(Co-signer)

X ~~[signature]~~
_____
Borrower

UNITED STATES OF AMERICA
RURAL HOUSING SERVICE

By ~~[signature]~~
_____
_____
Borrower

Title ___ Community Development Manager ___

Date ___ 10/31/97 ___

Account # 0016636713

RHS Field Office Address: ___ 101 Elk Fork Road, Elkton, KY   42220 ___

FmHA 1965-15 (Rev. 10-96)

## EXHIBIT "C"

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

# PROMISSORY NOTE

Type of Loan SECTION 502

Loan No ▓▓▓▓▓▓▓

Date: ___October 31___ , _1997_

_____304 Lucky Lane_____
(Property Address)

____Elkton____ , ___Todd___ , __Kentucky__
(City or Town)        (County)           (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ _29,760.00_ (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of _7.250_ %.The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

[ ] I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

[x] II. Payments shall not be deferred. I agree to pay principal and interest in _396_ installments as indicated in the box below.

> I will pay principal and interest by making a payment every month.
> I will make my monthly payment on the _28th_ day of each month beginning on __November 28, 1997__ and continuing for _395_ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on _October 31_ , _2030_ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
> My monthly payment will be $ _198.04_ . I will make my monthly payment at _the post office address noted on my billing statement_ or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1

## EXHIBIT "D"

**LATE CHARGES.** If the Government has not received the full amount of any monthly payment by the end of <u>15</u> days after the date it is due, I will pay a late charge. The amount of the charge will be <u>4.000</u> percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account # ████████

**NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at <u>USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166</u>, or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

**WAIVERS.** I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING:** Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

_____ Seal          _____ Seal
       Borrower                                        Borrower

_____ Seal          _____ Seal
       Borrower                                        Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ | |

Account #: ███████

3

00263

Form RD 3550-14 KY
(11-96)

*Space Above This Line For Recording Data*

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on   **October 31, 1997** ,   [Date]
The mortgagor is **William H. Schiess, unmarried**
("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| 5/7/79 | $27,750.00 | 5/7/2012 |

**(See Attachment)**

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the County of   Todd
, State of Kentucky

**(See Attachment)**

Source of Title:
Being the dame property conveyed to William H. Schiess, by deed from
Gary Salmon, et ux, et al, dated the 31st of October 1997 of record
in Deed Book  149 , Page 046  records of the Todd County Court Clerk's
Office.

which has the address of
304 Lucky Lane     [Street]     Elkton     [City]
Kentucky     [ZIP] 42220     ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.

---

*Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Agriculture, Clearance Officer, STOP-7602, 1400 Independence Ave., SW, Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB number.*

Page 1 of 6

# EXHIBIT "E"

5/7/79                 $27,750.00              5/7/2012              264

The above described Promissory Note which has an outstanding balance of $10,492.77
has been modified by an Assumption Agreement dated 10/31/97 as follows:

10/31/97          A.A. $10,492.77          10/31/2030
10/31/97          P.N. $29,760.00          10/31/2030


Description:

Lot No. 4 in the Bland Sharp Property, Plat recorded in Deed Book
99, Page 572, records of the Todd County Court Clerk's Office, and
to which plat reference is hereby made for a more complete description.

00265

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

**1.  Payment of Principal and Interest; Prepayment and Late Charges.**  Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2.  Funds for Taxes and Insurance.**  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any.  These items are called "Escrow Items."  Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount.  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount.  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity.  Lender shall apply the Funds to pay the Escrow Items.  Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.  However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise.  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.  The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law.  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency.  Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.  If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3.  Application of Payments.**  Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

**4.  Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any.  Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph.  If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

00266

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be

0267

applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security

268

Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:**

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

**24.** Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

**25. Release.** Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and

269

shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider      ☐ Planned Unit Development Rider      ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

_____ [SEAL]
William H. Schiess   Borrower

_____ [SEAL]
Borrower

STATE OF KENTUCKY   }
                    } ss:     **ACKNOWLEDGMENT**
COUNTY OF _Todd___  }

Before me, _Harold M. Johns_____, a Notary Public in and for the County of
_Todd_____, personally appeared _William H. Schiess_____
unmarried                                          who acknowledged that __he___ executed the
foregoing instrument on the __31__ day of __October__, __1997__ as __his__ free act
and deed.

WITNESS my hand and official seal this __31__ day of __October__, 1997.

[SEAL]
                                                    _____ Notary
                                                    Public
                                                    My commission expires __8/23/99__

**PREPARER'S STATEMENT**

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

_Harold M. Johns, Attorney_____        _____
(Name)                                                              (Signature)

_P. O. Box 746, Elkton, KY 42220_____
(Address)

**RECORDER'S CERTIFICATE**

STATE OF KENTUCKY   }
                    } ss:
COUNTY OF __TODD___ }

I, _Billy Fowler_____, Clerk of the County Court for the County aforesaid, do certify that the
foregoing mortgage was on the __31__ day of __Oct.__, __1997__
lodged for record _____ at _10:21_ o'clock _A_ M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this __31 st__ day of __Oct.__, __1997__.

_Billy Fowler_____
Clerk of _____ County Court
By _Kim Chapman_____, D.C.

STATE OF KENTUCKY }
COUNTY OF TODD    } Sct

I, B. J. FOWLER, Clerk of the Todd County Court, certify that the foregoing instrument of writing was this day lodged in my office for record, At _10:21_ A.M
recorded in Book # _175_ Page # _263_
Witness my hand, this _31_ day of _Oct._ 19_97_
_Billy Fowler_____ Clerk, T.C.C.
by: _Kim Chapman, dc._

Page 6 of 6

· Form RHS 3550-12
(10-96)

United States Department of Agriculture
Rural Housing Service

Form Approved
OMB No. 0575-0166

Account #: 

## SUBSIDY REPAYMENT AGREEMENT

1. As required under Section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with Section 502 of the Housing Act of 1949, is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3. Market value at time of initial subsidy $ <u>39,750.00</u> less amount of Rural Housing Service (RHS) loans $<u>40,252.77</u> less amount of any prior liens $ _____ equals my/our original equity $<u>502.77-</u>. This amount equals <u>-1.3</u> % of the market value as determined by dividing original equity by the market value.

4. If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, complete the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | Average interest rate paid | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6. Calculating Recapture
　　Market value (at the time of transfer or abandonment)
　　LESS:
　　　　Prior liens
　　　　RHS balance,
　　　　Reasonable closing costs,
　　　　Principal reduction at note rate,
　　　　Original equity (see paragraph 3), and
　　　　Capital improvements.
　　EQUALS
　　　　Appreciation Value. (If this is a positive value, continue.)
　　TIMES
　　　　Percentage in paragraph 4 (if applicable),
　　　　Percentage in paragraph 5, and
　　　　Return on borrower's original equity (100% - percentage in paragraph 3).
　　EQUALS
　　　　Value appreciation subject to recapture. Recapture due equals the lesser of this figure or the amount of subsidy received.

| Borrower | Date |
|---|---|
| William H. Schiess | 10/31/97 |
| Borrower | Date |
| | |

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB control number.


EXHIBIT "F"

USDA-RHS
Form RD 3550-22
(Rev. 8-99)

FORM APPROVED
OMB NO. 0575-0172

| UNITED STATES DEPARTMENT OF AGRICULTURE RURAL HOUSING SERVICE | Type of Loan Assumed | X | Section 502 |
| | | | Section 504 |
| **ASSUMPTION AGREEMENT SINGLE FAMILY HOUSING** | Type of Transferee | X | Program Transferee |
| | | | NonProgram Transferee |
| | Type of Assumption | X | New Rates and Terms |
| | | | Same Rates and Terms |
| | Sellers Case No: Transferee Case No: | | |

This Agreement dated ___Oct. 2, 2000___ is between the United States of America, acting through the Rural Housing Service, its successors and assigns (herein called the Government) and ___Lola J. Weatherford and Liza J. Russell___ (herein called the Borrower or transferee), whose mailing address is: ___304 West Washington, Elkton, KY  42220___

The Government is the holder of one or more of the following debt instruments executed, ___William H. Schiess___ (the sellers), which instrument is secured by real property located in ___Todd___ County, State of ___Kentucky___ pursuant to the following security instruments:

| Type of Debt Instrument | Date Executed | Original Principal | Interest Rate | Type of Security Instrument | Date Executed | Office Where Recorded | Book/Volume Document No. | Page No. |
|---|---|---|---|---|---|---|---|---|
| Prom. Note | 10/31/97 | 29,760. | 7.25 | RE Mortgage | 10/31/97 | Todd Co. | 115 | 263 |
| Assump. Ag. | 10/31/97 | 10,492.77 | 7.25 | RE Mortgage | 10/31/97 | Todd Co. | 115 | 263 |
| Prom. Note | 10/31/97 | 29,760. | 7.25 | RE Mortgage | 3/31/98 | Todd Co. | 117 | 312 |
| Assump. Ag. | 10/31/97 | 10,492.77 | 7.25 | RE Mortgage | 3/31/98 | Todd Co. | 117 | 312 |

In consideration of the assumption of the indebtedness as herein provided and the Government's consent to this assumption and related conveyance of the security property, if applicable, it is agreed as follows:

1.  The Borrower will assume the indebtedness and obligations of the above described debt and security instruments on (check only one):
☐ Same rates and terms; **or**
☒ New rates and terms with an interest rate of ___Six and Seven-Eighths___ percent( __6.875__ %) per annum, the principal sum of ___Thirty-Nine Thousand One and no/100___ dollars ($ __39,001.00__ ), with the first installment of principal and interest of $ __249.41__ due on ___November 2, 2000___, and $ __249.41__ thereafter on the ___2nd___ of each month until the principal and interest are fully paid, except that the final installment of the entire indebtedness evidenced hereby, if not paid sooner, shall be due and payable ___Thirty-Three___ ( __33__ ) years from the date of this Agreement. Borrower shall escrow taxes and insurance in accordance with Agency regulations. By execution of this agreement borrower becomes personally obligated to repay the principal and interest to the Government on the terms stated herein.
2.  Payments of principal and interest shall be applied in accordance with Government's accounting procedures in effect on the date of receipt of the payments. If Borrower's payment has not been received by the end of __15__ days after it becomes due, Borrower will pay a late charge of __4.0__ % of the overdue payment of principal and interest.
3.  The provision of the debt and security instruments hereby assumed shall, except as modified herein, remain in full force and effect, and Borrower assumes the obligations of and agrees to comply with all covenants, agreements, and conditions in said instruments, as modified here, as though Borrower had executed them as of the date thereof as principal obligors. Borrower agrees to be personally liable to the Government for the repayment of the obligation assumed herein. Nothing contained herein shall be construed to release the seller from liability on the above described debt instruments.
4.  Any provision of the debt or security instruments which requires that the Borrower occupy the Government financed dwelling or refinance to another credit source does not apply to assumption by a non-program transferee.
5.  This agreement is subject to present regulations of the Government and to its future regulations which are not inconsistent with the express provisions hereof:

UNITED STATES OF AMERICA
RURAL HOUSING SERVICE
By: _____
Title: __Community Development Manager__
Date: __10/2/00__
Address: __101 Elk Fork Rd.__
__Elkton, KY  42220__

_(signature)_
(Borrower)  Lola J. Weatherford

_(signature)_
(Borrower)  Liza J. Russell

_(Cosigner)_  The mark of Liza J. Russell witnessed by _(signature)_ 10/2/00

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

EXHIBIT "G"

*U.S.GPO:1999-755-007/86536

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

## PROMISSORY NOTE

Type of Loan SECTION 502                                                       Loan No. ▮▮▮▮▮▮

Date: __October 02__ , __2000__

_____304 West Washington Street_____
(Property Address)

___Elkton_____, ___Todd_____, ___Kentucky___
(City or Town)            (County)              (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $__390.00__ (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of __6.875__ %.The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

☐ I.  Principal and interest payments shall be temporarily deferred. The interest accrued to _____, _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

☒ II.  Payments shall not be deferred. I agree to pay principal and interest in __396_____ installments as indicated in the box below.

> I will pay principal and interest by making a payment every month.
> I will make my monthly payment on the __2nd__ day of each month beginning on __November 02, 2000__ and continuing for __395__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __October 02__ ,__2033__ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
> My monthly payment will be $_2.50_____ . I will make my monthly payment at __the post office__ __address noted on my billing statement_____ or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1

EXHIBIT____H____

**LATE CHARGES.** If the Government has not received the full amount of any monthly payment by the end of <u>15</u> days after the date it is due, I will pay a late charge. The amount of the charge will be <u>4.000</u> percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account #

**NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at <u>USDA / Rural Housing Service, c/o Customer</u> <u>Service Branch, P.O. Box 66889, St. Louis, MO 63166</u>, or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

**WAIVERS.** I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

x _Galen T Weatherbal_ Seal                           _____ Seal
         Borrower                                      Borrower

x _Liza T Russell_ Seal                               _____ Seal
         Borrower                                      Borrower

_The mark of Liza T. Russell witnessed_
_by _____ 10-2-00_

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL  $ | |

Account #: ████████

3

ᵖᵖ518

(Space Above This Line For Recording Date)

Form RD 3550-14 KY
(11-96)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on    October 2    , 2000 . [Date]
The mortgagor is   Lola J. Weatherford, unmarried and Liza J. Russell, unmarried ("Borrower").

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|

See Attachment 1

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the County of   Todd
, State of Kentucky

SEE EXHIBIT "A" Attached hereto

which has the address of    304 W. Washington St.    Elkton
                                                [Street]            [City]

Kentucky        [ZIP] 42220    ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.

*Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Agriculture, Clearance Officer, STOP-7602, 1400 Independence Ave., SW, Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB number.*

Page 1 of 6

EXHIBIT ____I____

00519

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.



Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be

Page 3 of 6

521

applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.

In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security

00522

Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

**24.** Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

**25. Release.** Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and

Page 5 of 6

shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

*Lola J. Weatherford* [SEAL]
Lola J. Weatherford    *Borrower*   X

*Liza J. Russell* [SEAL]
Liza J. Russell    *Borrower*   Liza made her mark

STATE OF KENTUCKY

COUNTY OF ___Todd___   } ss:

ACKNOWLEDGMENT above being an "X" witnessed by mail D CB

Before me, _Shelia M. McIntosh_, a Notary Public in and for the County of ___Todd___, personally appeared _Lola J. Weatherford & Liza J. Russell_ who acknowledged that ___they___ executed the foregoing instrument on the ___2nd___ day of ___October___, ___2000___ as ___their___ free act and deed.

WITNESS my hand and official seal this ___2nd___ day of ___October___   ___2000___

[SEAL]

_Shelia M. McIntosh_ Notary Public

My commission expires _07-31-2004_

## PREPARER'S STATEMENT

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

___Mark D. Collins___                    _[Signature]_
         (Name)                                    (Signature)

___PO Box 746, Elkton, KY  42220___
         (Address)

## RECORDER'S CERTIFICATE

STATE OF KENTUCKY

COUNTY OF ___Todd___   } ss:

I, _BILLY FOWLER_, Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the ___2nd___ day of ___October___, ___2000___, lodged for record ___ at _2:03_ o'clock _P_ M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this ___2nd___ day of ___October___, ___2000___

_BILLY FOWLER_
Clerk of _TODD_ County Court

By _Connie Smith_, D.C.

00524

Exhibit "A"

Lot No. 4 in the Bland Sharp Property, plat recorded in Deed Book 99, Page 572, records of the Todd County Court Clerk's Office, and to which plat reference is hereby made for a more complete description.

This lot is subject to restrictions recorded in Deed Book 99, Page 573, records of the Todd County Court Clerk's Office.

**SOURCE OF TITLE:** Being the same property conveyed to Lola J. Weatherford, unmarried, and Liza J. Russell, unmarried, from William H. Schiess, unmarried by Deed dated the 2nd day of OCTOBER, 2000, recorded in Deed Book 158, Page 175, in the records of the Todd County Court Clerk's office.

ATTACHMENT I

| DATE | LOAN AMOUNT | MATURITY DATE |
|------|-------------|---------------|
| 5/7/79 | $27,750.00 | 5/7/2012 |

The above described Promissory Note which has an outstanding balance of $10,492.77 has been modified by an Assumption Agreement dated 10/31/97 as follows:

| | | |
|------|-------------|---------------|
| 10/31/97 | A.A. $10,492.77 | 10/31/2030 |
| 10/31/97 | P.N. $29,760.00 | 10/31/2030 |

The above described Promissory Note and Assumption Agreement which have an outstanding balance of $39,001.00 have been modified by an Assumption Agreement dated 10-2-2000 as follows:

| | | |
|------|-------------|---------------|
| 10-2-2000 | $39,001.00 | 10/2/2033 |
| 10-2-2000 | $390.00 | 10/2/2033 |

STATE OF KENTUCKY  } Sct
COUNTY OF TODD

I, B. J. FOWLER, Clerk of the Todd County Court, certify that the foregoing instrument of writing was this day lodged in my office for record. At _2:03P_ M recorded in Book # _130_ Page # _578_ Witness my hand this _2_ day of _OCTOBER_ 20 _10_

_Billy Fowler_ Clerk, T.C.C.

by: _Connie Smith, dc_

Form RHS 3550-12
(10-96)

United States Department of Agriculture
Rural Housing Service

Form Approved
OMB No. 0575-0166

**SUBSIDY REPAYMENT AGREEMENT**

Account #: ▮▮▮▮▮

COPY

1.  As required under Section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with Section 502 of the Housing Act of 1949, is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2.  When I fail to occupy or transfer title to my home, recapture is due.  If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated.  If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full.  In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3.  Market value at time of initial subsidy $ 54,000.00  less amount of Rural Housing Service (RHS) loans $39,391.00  less amount of any prior liens $ 14,999.00  equals my/our original equity $390.00-  . This amount equals  -0.7  % of the market value as determined by dividing original equity by the market value.

4.  If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, complete the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans.  Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
|---|---|---|---|---|---|---|---|---|
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6.  Calculating Recapture
     Market value (at the time of transfer or abandonment)
LESS:
     Prior liens
     RHS balance.
     Reasonable closing costs.
     Principal reduction at note rate,
     Original equity (see paragraph 3), and
     Capital improvements.
EQUALS
     Appreciation Value. (If this is a positive value, continue.)
TIMES
     Percentage in paragraph 4 (if applicable),
     Percentage in paragraph 5, and
     Return on borrower's original equity (100% - percentage in paragraph 3).
EQUALS
     Value appreciation subject to recapture.  Recapture due equals the lesser of this figure or the amount of subsidy received.

| Borrower | Date |
|---|---|
| *Salv J Winehodel* | 10-2-00 |
| Borrower | Date |
| *Liza J Runcan* | 10-2-00 |

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602.  Please DO NOT RETURN this form to this address.  Forward to the local USDA office only.  You are not required to respond to this collection of information unless it displays a currently valid OMB control number.

Liza Made her mark above being an "X" witnessed by *MarDell*

EXHIBIT J

# United States District Court

**WESTERN** _____ **DISTRICT OF** _____ **KENTUCKY** _____
**AT BOWLING GREEN**

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:   1:18-cv-52-GNS

**v.**

Teddy Weatherford, et al.

**TO:**    (Name & Address of Defendant)

TEDDY WEATHERFORD, AS HEIR OF
LOLA J. WEATHERFORD
304 Jessie Avenue
Hopkinsville, KY 42240-4730

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

William F. Campbell
Assistant U.S. Attorney
United States Attorney's Office
717 West Broadway
Louisville, KY  40202

an answer to the complaint which is herewith served upon you, within ____twenty-one (21)____ days after service of
this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against
you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

_____          __5/1/2018_____
**CLERK**                                                                      DATE

_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐   Served personally upon the defendant.  Place where served:

_____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age
and
discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐   Returned unexecuted:

_____
_____
_____

☐   Other (specify):

_____
_____
_____

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on   _____        _____
                       Date                                          Signature of Server

---

[1]   **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**

# United States District Court

**WESTERN**          **DISTRICT OF**          **KENTUCKY**
**AT BOWLING GREEN**

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 1:18-cv-52-GNS

**v.**

Teddy Weatherford, et al.

**TO:**   (Name & Address of Defendant)

TINA UTLEY, AS HEIR OF
LOLA J. WEATHERFORD
990 Pea Ridge Sharon Grove Road
Elkton, KY 42220-8938

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

William F. Campbell
Assistant U.S. Attorney
United States Attorney's Office
717 West Broadway
Louisville, KY  40202

an answer to the complaint which is herewith served upon you, within _____twenty-one (21)_____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____          5/1/2018_____
**CLERK**                                              DATE

_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐ Served personally upon the defendant.  Place where served:

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and

discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐ Returned unexecuted:

_____
_____
_____

☐ Other (specify):

_____
_____
_____

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on     _____        _____
                      Date                             Signature of Server

---

[1] **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**

# United States District Court

_____WESTERN_____ DISTRICT OF _____KENTUCKY_____
### AT BOWLING GREEN

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 1:18-cv-52-GNS

**v.**

Teddy Weatherford, et al.

**TO:**  (Name & Address of Defendant)

      BARBARA WEATHERFORD, AS HEIR OF
      LOLA J. WEATHERFORD
      2981 Lake Road
      Woodland, TN 37191-9252

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

      William F. Campbell
      Assistant U.S. Attorney
      United States Attorney's Office
      717 West Broadway
      Louisville, KY  40202

an answer to the complaint which is herewith served upon you, within ____twenty-one (21)____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____       _____5/1/2018_____
**CLERK**                                            DATE

_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐    Served personally upon the defendant.  Place where served:

_____

☐    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and

discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐    Returned unexecuted:

_____
_____
_____

☐    Other (specify):

_____
_____
_____

---

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|
|  |  |  |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on _____     _____
                Date                                       Signature of Server

---

[1]   **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**

# United States District Court

**WESTERN** _____ **DISTRICT OF** _____ **KENTUCKY** _____
**AT BOWLING GREEN**

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:  1:18-cv-52-GNS

**v.**

Teddy Weatherford, et al.

**TO:**  (Name & Address of Defendant)

BESSIE WUKICH A/K/A
BESSIE J. WEATHERFORD, AS HEIR OF
LOLA J. WEATHERFORD
808 Long Road
Elkton, KY 42220-8911

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

William F. Campbell
Assistant U.S. Attorney
United States Attorney's Office
717 West Broadway
Louisville, KY  40202

an answer to the complaint which is herewith served upon you, within ____twenty-one (21)____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____       _____5/1/2018_____
**CLERK**                                                                        DATE

_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐     Served personally upon the defendant.  Place where served:

_____

☐     Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and

discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐     Returned unexecuted:

_____
_____
_____

☐     Other (specify):

_____
_____
_____

---

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.


Executed on     _____          _____
                        Date                                      Signature of Server



_____

[1]     **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**

# United States District Court

<u>**WESTERN**</u>         **DISTRICT OF**        <u>**KENTUCKY**</u>
**AT BOWLING GREEN**

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:  1:18-cv-52-GNS

**v.**

Teddy Weatherford, et al.

**TO:**     (Name & Address of Defendant)

GINA HADDOCK A/K/A
GINA NICOLE COLBRIDGE, AS HEIR OF
LOLA J. WEATHERFORD
2175 Greenville Road
Hopkinsville, KY 42240-1103

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

William F. Campbell
Assistant U.S. Attorney
United States Attorney's Office
717 West Broadway
Louisville, KY  40202

an answer to the complaint which is herewith served upon you, within _____twenty-one (21)_____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____          ___5/1/2018_____
**CLERK**                                                                                DATE

_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐    Served personally upon the defendant.  Place where served:

_____

☐    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and

discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐    Returned unexecuted:

_____
_____
_____

☐    Other (specify):

_____
_____
_____

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on _____     _____
                         Date                                                    Signature of Server

---

[1]    **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**

# United States District Court

**WESTERN**      **DISTRICT OF**      **KENTUCKY**
**AT BOWLING GREEN**

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:   1:18-cv-52-GNS

    **v.**

Teddy Weatherford, et al.

**TO:**     (Name & Address of Defendant)

       DANIELLE WEATHERFORD, AS HEIR OF
       LOLA J. WEATHERFORD
       304 W. Washington Street
       Elkton, KY 42220-8835

    **YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

       William F. Campbell
       Assistant U.S. Attorney
       United States Attorney's Office
       717 West Broadway
       Louisville, KY 40202

an answer to the complaint which is herewith served upon you, within _____twenty-one (21)_____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

_____      ___5/1/2018_____
**CLERK**                               DATE

_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐   Served personally upon the defendant.  Place where served:

_____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age
and
discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐   Returned unexecuted:

_____
_____
_____

☐   Other (specify):

_____
_____
_____

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on   _____        _____
Date                                            Signature of Server

---

[1]   **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**